UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Kelly J. McCormack,** | Civil No. 10-CV-4135 (SRN/FLN) |
| **Plaintiff,** | **MEMORANDUM AND ORDER** |
| v. | |
| **Minnesota Department of Commerce, and Glenn Wilson, individually and in his capacity as Commissioner of the Department of Commerce, et al.,** | |
| **Defendants**. | |

Alexander Ferrall, F S Ferrall, LLC, 7010 York Avenue South, Suite 153, Edina, Minnesota 55435, for Plaintiff

Anna E. Jenks, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1100, St. Paul, Minnesota 55101, for Defendants

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendants' Motion for Partial Dismissal.

**BACKGROUND**

Plaintiff was employed by the Minnesota Department of Commerce (the "Department") as a public utilities analyst for six months in 2008 and 2009. (Compl. ¶ 1.) The collective bargaining agreement with the employees' union required that Plaintiff be afforded a six-month probationary period. (Id. ¶ 2.) Plaintiff told her supervisor that she suffered from some mental health disorders and was under the care of a mental health professional. (Id. ¶¶ 3-4.) She

contends that she requested accommodations for her alleged disabilities and "was accommodated with a flexible start-time and the ability to telecommute." (Id. ¶ 7.)

In November 2008, Plaintiff was assigned to investigate a complaint made by KTF Telecom against Qwest Corporation. (Id. ¶ 9.) A month later, the Department received a complaint from a consumer (apparently unrelated to the KTF complaint) about "Caller ID Spoofing/Vishing." (Id. ¶ 11.) Plaintiff was assigned to this investigation as well. (Id. ¶ 12.) Although her allegations are a bit difficult to follow, she contends that one of her supervisors essentially killed the Qwest investigation despite Plaintiff's conclusion that Qwest had violated various agreements and FCC orders and regulations. (See id. ¶ 25.)

Plaintiff's supervisor revoked her disability accommodations one day after Plaintiff sent him KTF's documentation of the violations it alleged against Qwest. (Id. ¶ 27.) A week later, Plaintiff organized a panel presentation on voice security issues raised by the consumer complaint. (Id. ¶ 32.) She contends that her supervisor's supervisor insisted during this meeting that voice security issues were the responsibility of the FCC, not the Department. (Id. ¶ 33.) Plaintiff then tried to organize a teleconference with a national expert on issues related to the voice security problem, but she was fired before she could finalize plans for the teleconference.

On March 12, 2009, Plaintiff was informed that she would not be "certified" and thus could not remain employed at the Department. (Id. ¶ 37.) She contends that the Qwest investigation has been "converted into a wider investigation regarding Qwest's illegal business practices" and that the Department had to transfer its investigation of the consumer complaint to the Public Utilities Commission because it did not have sufficient information or expertise about the underlying issues to complete the investigation. (Id. ¶ 40.)

The Complaint raises three distinct claims. First, Plaintiff claims that Defendants violated the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA") by subjecting Plaintiff to discrimination and a hostile work environment on the basis of her disability. (Id. ¶ 42). Next, she contends that Defendants' actions in revoking Plaintiff's reasonable accommodations and terminating her employment violated Plaintiff's "First Amendment Rights to Due Process" and her "First Amendment Right to Free Speech." (Id. ¶¶ 46-47.) Finally, she contends that these actions violated the Minnesota whistleblower statute, Minn. Stat. § 181.932. (Id. ¶ 48.)

**DISCUSSION**

Defendants seek only a partial dismissal, asking the Court to dismiss all claims against the Commissioner, and to dismiss the state-law claims and § 1983 claims against the Department on 11th Amendment grounds. Plaintiff concedes that the dismissal of her claims against the Commissioner in his individual capacity is appropriate, stating in her opposition memorandum that all claims are not brought against the Commissioner "personally but against his office." (Pl.'s Opp'n Mem. at 5.)

**A.     Legal Standard**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). A court

may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

**B.     Claims Against the State**

The 11th Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the Amendment appears to allow a federal-court lawsuit by a citizen against her own state, the Supreme Court has held to the contrary. See Hans v. Louisiana, 134 U.S. 1, 15 (1890) (holding that federal courts cannot entertain lawsuit brought by a citizen against his own state). Thus, unless the state has waived its immunity, the Department is immune from suit in federal court on Plaintiff's state-law claims. As courts have recognized, Minnesota has not waived its immunity with respect to the MHRA or the whistleblower statute. Cooper v. St. Cloud State Univ., 226 F.3d 964, (8th Cir. 2000) (MHRA); Cantu v. Muraski, Civ. No. 05-2629, 2008 WL 151325 (D. Minn. Jan. 14, 2008) (Kyle, J.) (Whistleblower Act).

Plaintiff contends that Minnesota has waived its immunity for suits seeking redress for "unfair discriminatory practices." (Pl.'s Opp'n Mem. at 4 (citing Minn. Stat. § 363A.33).) The statutory section she cites is the private right of action in the MHRA. This section does not address, or purport to waive, the state's sovereign immunity as to MHRA or Whistleblower Act claims. Absent a clear and explicit waiver of sovereign immunity as to the specific claims at issue, Plaintiff's MHRA and whistleblower claims against the Department must be dismissed. See Edelman v. Jordan, 415 U.S. 651, 673 (1974) (stating that courts will find a state's waiver of

sovereign immunity "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction'") (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171 (1909)).

In addition, Minnesota has not waived its sovereign immunity with respect to claims arising under § 1983, such as the due process and First Amendment claims Plaintiff brings here. Phillips v. Minn. State Univ. Mankato, Civ. No. 09-1659, 2009 WL 5103233, at *3 (D. Minn. Dec. 17, 2009) (Doty, J.); see also Quern v. Jordan, 440 U.S. 332, 345 (1979) (noting that Congress did not abrogate states' sovereign immunity by enacting § 1983). Plaintiff's § 1983 claims must likewise be dismissed.

Plaintiff contends that "§ 1983 may be applied against any state that has given its consent to be sued for the redress of discriminatory practices." (Pl.'s Opp'n Mem. at 5 (citing Welch v. Tex. Dep't of Highways & Public Transp., 483 U.S. 468, 472-72 (1987)).) The case Plaintiff cites for this proposition does not support that proposition, however. Rather, in Welch, the Supreme Court discussed whether Congress had explicitly abrogated the states' sovereign immunity with respect to claims under the Jones Act. Welch, 483 U.S. at 475-76. The Court found that it had not, although the Court recognized that Congress could abrogate states' sovereign immunity with respect to claims arising under "'the substantive provisions of the Fourteenth Amendment.'" Id. (quoting Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976)). This appears to be the source of Plaintiff's argument, but it is unavailing. The fact that Congress could, if it chose, abrogate a state's sovereign immunity to suits under § 1983 (assuming that § 1983 is enforcing the substantive provisions of the Fourteenth Amendment) does not mean that Congress has done so. Indeed, Congress has not done so, and Minnesota has not voluntarily

waived that immunity. It is therefore immune from Plaintiff's § 1983 claims and those claims must be dismissed.

Thus, as Defendants acknowledge, the only claim against the Department that remains for resolution is Plaintiff's ADA claim. See Minn. Stat. § 1.05, subd. 4 (waiving Minnesota's sovereign immunity for ADA claims by employees of the state).

**B.     Claims against the Commissioner**

As noted above, Plaintiff's claims are brought against the Commissioner in his official capacity only. Defendants argue that the ADA claim against the Commissioner in his official capacity is duplicative of the ADA claim against the Department and should be dismissed. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (finding that lawsuit against state official in his official capacity is "no different from a suit against the state itself"). Because the ADA claim is duplicative, Plaintiff's ADA claim against the Commissioner in his official capacity must be dismissed.

Defendants raise several arguments about the remainder of Plaintiff's claims against the Commissioner in his official capacity. However, because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," Kentucky v. Graham, 473 U.S. 159, 166 (1985), the above immunity discussion applies equally to the claims against the Commissioner in his official capacity. If the state is immune from suit under the MHRA, Minnesota's whistleblower statute, and § 1983, the Commissioner in his official capacity is also immune from suit. Plaintiff's claims against the Commissioner in his official capacity must be dismissed.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion for Partial Dismissal (Doc. No. 6) is **GRANTED**; and

2. Plaintiff's § 1983, MHRA, and whistleblower claims against the State and all claims against the Commissioner in his individual or official capacity are **DISMISSED**.

Dated:   February 24, 2011

                                               s/ Susan Richard Nelson
                                              SUSAN RICHARD NELSON
                                              United States District Judge